FILED

WESTERN DISTRICT OF ............

08-CV-05172-CMP

1             **UNITED STATES DISTRICT COURT**

2         **FOR THE WESTERN DISTRICT OF WASHINGTON**

3   Richard Tyler Frazer,

4          Plaintiff,

5    vs.

6   The United States of America; The United

7   States Patent and Trademark Office;

8   Michael Carone, Supervisory Patent Examiner;

9   John Dudas, Commissioner of Patents;

10   John Radi, Patent Examiner; and

11   Lulit Semunegus, Patent Examiner,

12         Defendants.

**C08 5172 RBL**

**COMPLAINT**

**FOR DAMAGES**

13           **Parties to this Complaint:**

14   **Plaintiff:**

15   Richard Tyler Frazer

16   9 Poplar Road # 41

17   Montesano, Washington 98563

18   (360) 249-5441

COMPLAINT FOR DAMAGES       Page 1 of 23       Richard Tyler Frazer
Case No.       9 Poplar Road # 41
Montesano, WA. 98563
(360) 249-5441

**Defendants:**

1.  The United States of America

    United States Department of Justice

    United States Attorney General

    950 Pennsylvania Avenue, N.W.

    Washington, D.C. 20530

2.  United States Patent and Trademark Office

    Office of the General Counsel

    10B20, Madison Building East

    600 Dulany Street

    Alexandria, VA

    (571) 272-7000

3.  Michael Carone, in his official capacity as Supervisory Patent Examiner for the United States Patent and Trademark Office

4.  John Dudas, in his official capacity as Commissioner of Patents for the United States Patent and Trademark Office

5.  John Radi, in his official capacity as Patent Examiner for the United States Patent and Trademark Office

6.  Lulit Semunegus, in her official capacity as Patent Examiner for the United States Patent and Trademark Office

Richard Tyler Frazer
9 Poplar Road # 41
Montesano, WA. 98563
(360) 249-5441

1                                     **Jurisdiction:**

2    Jurisdiction in this action is predicated upon:

3    United States Code, Title 28, Sections 1331, 1332 and 1346(b);

4    The Constitution of the United States, Article 1, Section 8, in part, which reads, "To promote the

5    progress of science and useful arts, by securing for limited times to authors and inventors the

6    exclusive right to their respective writings and discoveries.";

7    The Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States; and

8    The Equal Access to Justice Act (EAJA), United States Code, Title 5, Section 504 and United

9    States Code, Title 28, Section 2412

10                                  **Statement of Claim:**

11       Plaintiff spent four years drafting an application for a Non-provisional Utility Patent in

12    which he was solely responsible for all aspects of said application.

13       On August 14, 2003, Plaintiff mailed his Non-provisional Utility Patent Application

14    entitled "Method of Propulsion and Attitude Control in Fluid Environments and Vehicles

15    Utilizing Said Method," by first class United States Postal Service mail, to the United Patent and

16    Trademark Office (USPTO) at the address of: Mail Stop Patent Application, Commissioner of

17    Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

18       Plaintiff included with this patent application: **(1)** UTILITY PATENT APPLICATION

19    TRANSMITTAL, 1 page, form PTP/SB/05 (80-03); **(2)** FEE TRANSMITTAL for FY 2003, 2

20    pages, form PTO/SB/17 (08-03); **(3)** $375.00 cashiers check as BASIC FILING FEE; **(4)**

21    Application Data Sheet, 2 pages; **(5)** Information Disclosure Statement (IDS), 1 page, **(6)** Copies

22    of IDS related documents, 301 pages and **(7)** Return Postcard.

COMPLAINT FOR DAMAGES        Page 3 of 23            Richard Tyler Frazer
Case No.                                                9 Poplar Road # 41
                                                          Montesano, WA. 98563
                                                          (360) 249-5441

1    Plaintiff's Non-provisional Utility Patent Application was filed with the United States

2  Patent and Trademark Office on August 18th, 2003, and was assigned the Application Number:

3  10/642,554.

4    According to the document entitled, "CONFIRMATION NO. 4243, FILING RECEIPT,"

5  henceforth referred to as, "FILING RECEIPT," mailed on November 13th, 2003, Plaintiff's

6  patent application was first assigned to Art Unit 3617.  Art Unit 3617 encompasses

7  classifications:

8    *1.  104, Railways*
9    *2.  105, Railway Rolling Stock*
10   *3.  114, Ships*
11   *4.  152, Resilient Tires and Wheels*
12   *5.  191, Electricity: Transmission to Vehicles*
13   *6.  213, Railway Draft Appliances*
14   *7.  238, Railways: Surface Track*
15   *8.  246, Railway Switches*
16   *9.  258, Railway Mail Delivery*
17   *10. 278, Land Vehicles: Animal Draft Appliances*
18   *11. 291, Track Sanders*
19   *12. 295, Railway Wheels and Axles*
20   *13. 301, Land Vehicles: Wheels and Axles*
21   *14. 305, Wheels Substitutes for Land Vehicles*
22   *15. 440, Marine Propulsion*
23   *16. 441, Buoys, Rafts and Aquatic Devices*
24
25    Listed as third criteria in Plaintiff's document entitled, "Application Data Sheet,"

26  concerning, "Suggested Classification," Plaintiff suggested United States Classification/sub-

27  classification, "244/12.3," as to which classification Plaintiff believed to be the closest

28  classification to which his invention was related.  Classification 244/12.3 encompasses:

29  *"Apparatus wherein the aeronautical machine comprises separate and distinct power plants or*
30  *motive means, at least one of the motive means being used solely for forward or horizontal*
31  *propulsion and at least one other motive means solely for lift or vertical propulsion."*
32
33    Listed as fourth criteria in Plaintiff's document entitled, "Application Data Sheet,"

34  concerning, "Suggested Group Art Unit," Plaintiff suggested Art Unit, "3644," as to which Art

COMPLAINT FOR DAMAGES          Page 4 of 23          Richard Tyler Frazer
Case No.                                              9 Poplar Road # 41
                                                     Montesano, WA. 98563
                                                     (360) 249-5441

1    Unit Plaintiff believed to be the closest Art Unit to which his invention was related.  Art Unit

2    3644 encompasses:

3         1.  *244, Aeronautics and Astronautics*

4         Classification/sub-classification, 244/12.3, falls under Art Unit 3644.

5       According to the USPTO document entitled, "RFP DOC-52-PAPT –07-01001, Attachment

6    1, Appendix to Statement of Work/Specifications, page 1, under the heading, 'USPTO Mission

7    and Work Environment,' sub-heading, "<u>Patent Organization,</u>"' relevant part:

8    *"Each Technology Center is comprised of Groups and each Group is subdivided into Art Units.*
9    *Art Unit examiners specialize in a specific subset of technologies, which is referred to as the*
10    *"art" that they examine."*
11

12       On January 27th, 2005, more than 17 months from the filing date of Plaintiff's patent

13    application, Plaintiff phoned the USPTO, at the phone number of, (703) 306-5960, to ascertain

14    the status of Plaintiff's patent application as Plaintiff had yet to receive any communication

15    regarding the examination/prosecution of Plaintiff's patent application, excepting the

16    aforementioned FILING RECEIPT.  Plaintiff was told by an employee of the USPTO the phone

17    number to Art Unit 3617 was (703) 306-4198.  Plaintiff then phoned Art Unit 3617 at the phone

18    number, (703) 360-4198, and was told that his patent application had been reassigned to Art Unit

19    3641.  Plaintiff then re-phoned the USPTO at the phone number, (703) 360-5960 and asked for

20    the phone number to Art Unit 3641.  Plaintiff was then transferred to Art Unit 3641, where he

21    left a message inquiring as to the status of Plaintiff's patent application.  Plaintiff left his name

22    and application number.  Lulit Semunegus returned Plaintiff's phone call and informed Plaintiff

23    of her decision to require restriction in regards to Plaintiff's patent application.  Plaintiff asked

24    that said requirement and the reason for which be made in writing, as there was a bad phone

25    connection.

COMPLAINT FOR DAMAGES       Page 5 of 23       Richard Tyler Frazer
Case No.                                       9 Poplar Road # 41
                                                    Montesano, WA. 98563
                                                    (360) 249-5441

1        According to the cover sheet of the First Office Action, henceforth referred to as, "FOA,"

2   mailed upon March 30th, 2005, Plaintiff's patent application had been reassigned to Art Unit

3   3641.  Art Unit 3641 encompasses:

4       1.  33, Geometrical Instruments
5       2.  42, Firearms
6       3.  86, Ammunition and Explosive-Charge Making
7       4.  89, Ordnance
8       5.  102, Ammunition and Explosives
9       6.  114, Ships
10      7.  124, Mechanical Guns and Projectors
11      8.  244, Aeronautics and Astronautics (Sub-class 3.13)
12      9.  976, Nuclear Technology
13
14       Regarding number 8, listed above, classification/sub-classification 244/3.13, the only

15  classification/sub-classification that falls under Art Unit 3641 in regards to classification 244,

16  encompasses:

17  "Subject matter in which the missile is directed to a target by a beam of electromagnetic wave
18  energy which is transmitted from the command source to the target."
19
20       The Manual of Patent Examination Procedure, Eighth Edition, Revision 2, May 2004,

21  henceforth referred to as, "MPEP," is the applicable manual of said name at the time of the

22  Plaintiff's patent application.

23       According to MPEP 903.08, relevant part:

24  "Applicant may be advised of expected application transfers by using Form Paragraph 5.03."
25  "5.03 Reassignment Affecting Application Location
26       The Art Unit location of your application in the USPTO has changed.  To aid in
27  correlating any papers for this application, all further correspondence regarding this
28  application should be directed to Art Unit [1].
29  Examiner's Note:
30       This paragraph should be used in all Office actions when the location of an application is
31  changed due to a reassignment of the art, transfer of the application to a different Art Unit, or
32  transfer of an examiner and the examiner's docket."
33

1       By assigning Plaintiff's patent application to Art Unit 3617, first, and then reassigning

2   said patent application to Art Unit 3641, and not assigning the Plaintiff's application to the

3   proper Art Unit, 3644, as indicated by classification/sub-classification, to which it was most

4   closely related, the USPTO was negligent in providing qualified personnel to perform    .

5   examination/prosecution of Plaintiff's patent application.

6       Without the specialized knowledge of the proper examiner of the proper Art Unit, the

7   USPTO created a situation in which Plaintiff was forced to attempt to try to explain to the

8   assigned examiner specialized knowledge regarding art she was not knowledgeable of.

9       This act of negligence injured Plaintiff's ability to successfully prosecute Plaintiff's

10   patent application.

11       The USPTO failed to inform Plaintiff of reassignment of Plaintiff's patent application

12   from Art Unit 3617 to Art Unit 3641.

13       This act of negligence injured Plaintiff's ability to ascertain the status of Plaintiff's patent

14   application and created undue hardship in ascertaining just where Plaintiff's patent application

15   was being prosecuted/examined and just what Art Unit and examiner was responsible for said

16   examination/prosecution.

17       According to the FOA, examination/prosecution of said patent application was assigned

18   to Lulit Semunegus, as Primary Examiner, under the supervision of Supervisory Patent

19   Examiner, Michael Carone.

20       According to MPEP 903.08(b), relevant part:

21   *"The supervisory patent examiner normally assigns the application..."*
22

23       Lulit Semunegus was employed by the USPTO from October 31st, 2000, date derived

24   from first patent granted bearing her name as either assistant or primary examiner, until July 20th,

COMPLAINT FOR DAMAGES      Page 7 of 23        Richard Tyler Frazer
Case No.                                                9 Poplar Road # 41
                                                            Montesano, WA. 98563
                                                            (360) 249-5441

1   2005, date derived from Second Office Action, henceforth referred to as, "SOA."  By these

2   calculations, Ms. Semunegus was employed by the USPTO in an examiner, assistant or primary,

3   capacity for approximately five years.

4          During Ms. Semunegus's tenure as an employee of the USPTO, she was responsible, as

5   an assistant examiner, for 263 patents granted.

6          Of those 263 patents granted, Ms. Semunegus was assistant examiner to Mr. Carone,

7   primary examiner, for 185 of those patents granted.  This relationship accounted for more than

8   70% of the patents granted by Ms. Semunegus as an assistant examiner.

9          Of those 263 patents granted in which Ms. Semunegus was an assistant examiner, 8

10   patents granted concerned classification 244, Aeronautics and Astronautics, in regards to

11   complete machines.  Patents granted under this classification accounted for 3% of Ms.

12   Semunegus's total of patents granted, as an assistant examiner, over her tenure with the USPTO.

13   Mr. Carone was primary examiner on all, 100%, of these patents granted.

14          Of those 263 patents granted in which Ms. Semunegus was an assistant examiner, a

15   majority concerned sub-classifications 33, 42, 86, 89, 102, 114, and 124 and miscellaneous

16   classifications.  Patents granted under these classifications accounted for 97% of Ms.

17   Semunegus's total of patents granted, as an assistant examiner, over her tenure with the USPTO.

18          During Ms. Semunegus's tenure as an employee of the USPTO, she was responsible, as a

19   primary examiner, for 1 patent granted, patent number 6,877,268.

20          Mr. Carone, or his assignee, was negligent in assigning Plaintiff's patent application to

21   Ms. Semunegus.

1    The record of Ms. Semunegus's tenure shows that she lacked experience in regards to

2    examining/ prosecuting patents in regards to the Art to which Plaintiff's invention is most closely

3    related.

4    The record of Ms. Semunegus's tenure shows that she lacked experience in regards to

5    examining/ prosecuting patents as a primary examiner.  She was employed by the USPTO for

6    about 3 years, considering the Plaintiff's filing date for Plaintiff's patent application, when she

7    was assigned to said patent application as primary examiner.

8    Ms. Semunegus's close association with Mr. Carone in examining/prosecuting a majority

9    of the patents granted during said tenure further shows that Mr. Carone was knowledgeable of

10   Ms. Semunegus's limitations in regards to experience in relevant Art and in the capacity of a

11   primary examiner.

12   As it may be raised by the USPTO that it was a discretionary decision to assign Plaintiff's

13   patent application to Ms. Semunegus for examination/prosecution, it is the Plaintiff's position

14   that whoever made that assignment did not display due diligence in making said assignment.

15   The record of Ms. Semunegus's tenure, work-load, area of expertise and lack of experience as a

16   primary examiner are all factors which would be taken into consideration in making a proper

17   assignment of Plaintiff's patent application for an appropriate examination/prosecution of said

18   patent application.  By ignoring these factors, whoever assigned the Plaintiff's patent application

19   to Ms. Semunegus was negligent in providing the Plaintiff with a qualified examiner, thereby

20   injuring the Plaintiff's ability to prosecute Plaintiff's patent application.

21   According to the United State Code, Title 35, Section 121, relevant part:

22   *"If two or more independent and distinct inventions are claimed in one application, the Director*
23   *may require the application to be restricted to one of the inventions."*
24
25   According to the Code of Federal Regulations, Title 37, Section 1.141:

COMPLAINT FOR DAMAGES          Page 9 of 23          Richard Tyler Frazer
Case No.                                            9 Poplar Road # 41
                                                    Montesano, WA. 98563
                                                    (360) 249-5441

1   *"Two or more independent and distinct inventions may not be claimed in one national*
2   *application, except that more than one species of an invention, not to exceed a reasonable*
3   *number, may be specifically claimed in different claims in one national application, provided the*
4   *application also includes an allowable claim generic to all the claimed species and all the claims*
5   *to species in excess of one are written in dependent form or otherwise include all the limitations*
6   *of the generic claim."*
7   *Historical and Revision Notes*
8   *This section enacts as law existing practice with respect to division, at the same time introducing*
9   *a number of changes. Division is made discretionary with the Commissioner. The requirements*
10   *of section 120 are made applicable and neither of the resulting patents can be held invalid over*
11   *the other merely because of their being divided in several patents. In some cases a divisional*
12   *application may be filed by the assignee."*
13

14        According to LAW.COM Dictionary:

15   *And-conj. This little word is important in law, particularly when compared to or. Most*
16   *commonly it determines if one or both owners have to sign documents. Example: when an*
17   *automobile registration reads that the title is for Barney and Sarah Oldfield, then both must sign*
18   *off upon sale, but if it says "or" then only one will have to sign; if Barney dies then the title is*
19   *automatically in Sarah's name if it reads "or," but not if it reads "and."*
20

21   *Or-conj. Either; in the alternative. It is often vital to distinguish between "or" and "and."*
22   *Example: Title to the Cadillac written "Mary or Bill Davidson" means either one could transfer*
23   *the car, but if written "Mary and Bill Davidson," both must sign to change title.*
24

25        According to United States Code, Title 35, Section 2(b), relevant part:

26   *"(2)May establish regulations, not inconsistent with law, which. (A) shall govern the conduct of*
27   *proceedings in the Office;"*
28

29        The USPTO has devoted an entire section to restriction based upon 35 USC, 121 and 37

30   CFR, 1.141, see MPEP Section 800.

31        The USPTO has taken the position that it is permissible to require restriction based upon

32   either Independence or Distinctness. See MPEP 800. The USPTO does not have the authority of

33   law as it is written to require restriction in the alternative sense of "Independent" or "Distinct."

34   The applicable law and statute, mentioned above, is strictly written in both as stating,

35   "independent and distinct," meaning that in order to require restriction, an invention must meet

COMPLAINT FOR DAMAGES        Page 10 of 23        Richard Tyler Frazer
Case No.                                             9 Poplar Road # 41
                                                            Montesano, WA. 98563
                                                            (360) 249-5441

1   both qualifications, not one or the other.  The USPTO's interpretation of the relevant law and

2   regulation is inconsistent with the law as it is written and is therefore negligent as interpretation

3   of law in this sense is not discretionary.  Further more, as requirement for restriction is a

4   discretionary matter for the Director, the law as it is written must be abided by in order to invoke

5   such a discretionary power.

6       The USPTO in its interpretation of law and regulation in regards to the requirement for

7   restriction gives the USPTO the power to require restriction in which there is no basis in the

8   applicable laws or regulations as written.  The USPTO has given itself more power than

9   applicable law or regulation allows.

10      If Congress intended to allow the Director of the USPTO the discretion of requirement

11  for restriction in the alternative sense of either "Independence" or "Distinctness," Congress

12  could, should or would have written, "independent or distinct," not "independent and distinct."

13      This act of negligence made a grey area in patent law even more indistinct, injuring

14  Plaintiff's ability to prosecute Plaintiff's patent application.  Furthermore, Plaintiff asserts that

15  this act of negligence allows for arbitrary and capricious requirements for restriction in which the

16  USPTO has no authority to exercise.

17      As stated before, the USPTO has devoted an entire section of MPEP to Restriction,

18  MPEP section 800, in which examiners are given to believe that it may be proper to require

19  restriction in the alternative sense of either "Independent" or "Distinct" inventions.  See MPEP

20  802.01 and 803.

21      By negligently applying 35 USC 121 and 37 CFR 1.141 in its drafting of MPEP section

22  800, the USPTO has erroneously informed its examiners that they have the authority to require

23  restriction in cases in which there is no authority to do so derived by law.

1    This act of negligence injured the Plaintiff's ability to prosecute Plaintiff's patent

2    application by forcing Plaintiff to address an erroneous requirement for restriction.

3    FOA was mailed on March 30th, 2005, over 19 months from the filing date of Plaintiff's

4    patent application.  A shortened statutory period for reply of 1 month was set.

5    Plaintiff mailed APPLICANT'S REPLY, henceforth referred to as "AP1," on April 27th,

6    2005.

7    Ms. Semunegus negligently required restriction pursuant to 35 U.S.C., section 121, based

8    solely upon her perception that the method and vehicle were distinct.  Claim 1, line 1, clearly

9    claims a method of propulsion and attitude control applicable to all fluid environments, not just a

10   V/STOL aircraft as Ms. Semunegus asserts in the FOA.  Ms. Semunegus selectively chose to

11   ignore the plain language of the claim and the specification and figures in rendering her own

12   opinion as to what was described and claimed.

13   This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application.

14   On page 2 of the FOA, section 1, directly following the second paragraph, Ms.

15   Semunegus negligently omits form paragraph 8.13 and disregards MPEP 816, in describing why

16   the process and product were distinct.

17   This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application.

18   On page 2 of the FOA, section 1, directly following the second paragraph, Ms.

19   Semunegus negligently omits form paragraph 8.21.02.

20   This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application.

21   On page 2 of the FOA, section 1, last paragraph,  Ms. Semunegus negligently uses the

22   word, "thought," for the word, "though."

1    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

2  as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

3    On page 2 of the FOA, section 2, first paragraph, Ms. Semunegus negligently uses the

4  word, "persecution," for the word, "prosecution."

5    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

6  as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.  This misuse of

7  the word, "persecution," could also be taken as a warning or threat.

8    On pages 2 and 3, of the FOA, section 2, directly following the first paragraph,  Ms.

9  Semunegus negligently uses two different means to describe the figures.

10    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

11  as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

12    On page 3, of the FOA, section 2, third paragraph, Ms. Semunegus negligently omits the

13  word, "of," between the words "listing" and "all."

14    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

15  as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

16    On page 3, of the FOA, section 2, directly following the third paragraph, Ms. Semunegus

17  negligently inserts paragraph form 8.21.02 in the middle of paragraph form 8.01.

18    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

19  as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

20    On page 3, of the FOA, section 2, fifth paragraph, Ms. Semunegus negligently uses the

21  word, "depend," for the word, "dependant."

22    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

23  as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

Richard Tyler Frazer
9 Poplar Road # 41
Montesano, WA. 98563
(360) 249-5441

1    On pages 3 and 4, of the FOA, Ms. Semunegus negligently omits any Conclusion.

2    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

3    as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

4    On pages 3 and 4, of the FOA, Ms. Semunegus negligently omits section 3., as the

5    numbered sections of the FOA progress directly from 2 to 4.

6    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

7    as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

8    At the end of the FOA, Ms. Semunegus, negligently omits the date of drafting of this

9    Office Action and her initials.  See MPEP 707.11.

10    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

11    as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

12    The Second Office Action (SOA) was mailed on August 12th, 2005, over 23 months from

13    the filing date of Plaintiff's patent application.  A shortened statutory period for reply of (3) three

14    months was set.

15    Plaintiff mailed APPLICANT'S REPLY TO SECOND OFFICE ACTION, henceforth

16    referred to as "AP2," on February 8th, 2005, along with the document form PETITION FOR

17    EXTENSION OF TIME UNDER 37 CFR 1.136(a) FY 2005.

18    On page 2, of the SOA, section 1, first paragraph, Ms. Semunegus negligently uses the

19    word, "glasses," for the word, "gases."

20    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

21    as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.  Furthermore this

22    act of negligence injured Plaintiff by forcing Plaintiff to address an issue of medium not claimed

23    by the Plaintiff in the patent application.

1    On page 2, of the SOA, section 1, second paragraph, Ms. Semunegus determined that the

2    requirement for restriction was proper and therefore FINAL.

3    Ms.Semunegus ignored the plain language of the claims, specification, figures and the

4    arguments presented in Plaintiff's AP1 that the invention functioned in ALL fluid mediums.  Ms.

5    Semunegus ignored the assertion made by the Plaintiff that his invention could be made to

6    encompass all fluid environments.

7    Example:  The North American Dipper Bird and Diving Petrels utilize their wings as

8    main propulsion and attitude control in both air and water.  Both birds essentially "fly" through

9    the air and water.  By Ms. Semunegus's argument, the method used by these birds to propel and

10   control themselves in two different fluid environments are two distinct inventions, even though

11   they utilize the exact same structures in the same way with the same methodology.  Or, the birds,

12   each and of themselves, should be considered as distinct inventions, one that flies and one that

13   swims.  Both birds can fly like a conventional aircraft, hover like a helicopter or VTOL, propel

14   themselves on the surface like a boat and dive like a submarine.  Plaintiff only used the

15   terminology available in describing the capacity, use and methodology of Plaintiff's invention.

16   See, Title of Invention.  See MPEP 2173.05(a)(II).

17   As there is currently no applicable classification for the Plaintiff's invention, Plaintiff

18   relied upon the structural nature of Plaintiff's invention in assessing the classification and Art

19   most nearly related to said invention.  Such related classification should not be solely used to

20   assess the invention, rather, a reading of the specification and figures should be used in

21   determining new/original classification.

22   The requirement for restriction had no legal basis and no logical basis, only Ms.

23   Semunegus's selective interpretation of an Art which she had insufficient knowledge of.  By

COMPLAINT FOR DAMAGES           Page 15 of 23                Richard Tyler Frazer
Case No.                                                     9 Poplar Road # 41
                                                             Montesano, WA. 98563
                                                             (360) 249-5441

1   being selective in her interpretation and arguments, Ms. Semunegus was negligent in assessing

2   the invention taken as a whole as described in the specification and figures and as claimed.

3       This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

4   as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

5       On pages 2 and 3, of the SOA, section 3, first paragraph, Ms. Semunegus states, "The

6   specification does not describe the manner or make obvious how electric, hydraulic or steam

7   motors are actually used as the drive fans for this particular vehicle, specifically examiner is

8   unsure how a steam or hydraulic motor will work as a drive fan for this particular vehicle.

9   Furthermore, the specification does not describe or make obvious how and where the mounting

10  points for the drive-fans and drive components are placed or utilized."

11      Ms. Semunegus was negligent in her reading of the specification and figures.  (See Patent

12  Application, Page 23, [120], lines 1-3, pages 31-32, [147, 149], and FIGS. 19a-19c).

13      This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

14  as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

15      On page 3, of the SOA, section 5, first and second paragraph, Ms. Semunegus, uses

16  paragraph form 7.34.15, and negligently omits any use or application of MPEP 707.07(j)(I, II

17  and III).

18      This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

19  as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

20      On page 3, of the SOA, section 5, third paragraph,  Ms. Semunegus, inserts paragraph

21  form 7.34.02, and negligently omits the following portion of said paragraph,

22  *"The term "[1]" in claim [2] is used by the claim to mean "[3]", while the accepted meaning is*
23  *"[4]."  The term is indefinite because the specification does not clearly redefine the term."*
24

COMPLAINT FOR DAMAGES           Page 16 of 23          Richard Tyler Frazer
Case No.                                                9 Poplar Road # 41
                                                        Montesano, WA. 98563
                                                        (360) 249-5441

1    According to the Examiner's Note pertaining to this paragraph form:

2    *"4.  This paragraph should only be used where the specification does not clearly redefine the*
3    *claim term at issue."*
4    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

5    as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

6    On page 3, of the SOA, section 6, Ms. Semunegus, lists terms which she views as

7    indefinite.

8    Ms. Semunegus utilizes an abbreviated form of paragraph form 7.34.08 which reads:

9    *"Regarding claim [1], the phrase "for example" renders the claim indefinite because it is*
10   *unclear whether the limitation(s) following the phrase are part of the claimed invention.  See*
11   *MPEP, section 2173(d)."*
12

13   Ms. Semunegus is negligent in her subjective view that these terms are indefinite.  Ms.

14   Semunegus has no lawful, regulatory or rule based authority beyond her naked assertion that

15   these terms are indefinite to reject said claims.  Ms. Semunegus provides no prima facie evidence

16   as to why these terms are indefinite.  See MPEP 2111, MPEP 2173(d), MPEP 2173.05(a)(II),

17   MPEP 2173.05(b)(A-F), MPEP 2173.05(h)(II).

18   This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

19   as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

20   On page 4, of the SOA, section 7, Ms. Semunegus, lists terms which she views as not

21   descriptive.

22   Ms. Semunegus utilizes an abbreviated form of paragraph form 7.34.09 which reads:

23   *"Regarding claim [1], the phrase "or the like" renders the claim(s) indefinite because the*
24   *claim(s) include(s) elements not actually disclosed (those encompassed by the "or the like")*
25   *thereby rendering the claim(s) unascertainable.  See MPEP, section 2173(d)."*
26

1    Ms. Semunegus is negligent in her subjective view that these terms not descriptive.  Ms.

2    Semunegus has no lawful, regulatory or rule based authority beyond her naked assertion that

3    these terms are not descriptive to reject said claims.  Ms. Semunegus provides no prima facie

4    evidence as to why these terms are not descriptive.  See MPEP 2173(d).  See also MPEP 2111,

5    MPEP 2173.05(a)(II), MPEP 2173.05(b)(A-F).

6    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

7    as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

8    On page 4, of the SOA, section 8, Ms. Semunegus, lists the term "the dihedral" in which

9    she negligently asserts that there is no antecedent basis for the limitation in this claim.  Ms.

10   Semunegus also ignores section MPEP 2173.05(e) in regards to suggesting corrections to

11   antecedent problems.

12   Ms. Semunegus utilizes paragraph form 7.34.05, to make this rejection of claim 2:

13   Dihedral is clearly explained in the specification, pages 25-26, and illustrated by figures,

14   FIGS. 12a-12b.

15   Dihedral is a common term used in aeronautics to describe the angle of a wing in relation

16   to the horizontal plain.

17   Example: Try a Google Search using these three words, "definition", "wing" and

18   "dihedral."

19   This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

20   as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

21   On page 4, of the SOA, section 9, Ms. Semunegus, negligently omitted the last digit of

22   the patent regarding Melkuti, listing his patent as "(5,454,53)."  The Melkuti patent is patent

23   number "5,454,531."

COMPLAINT FOR DAMAGES             Page 18 of 23                  Richard Tyler Frazer
Case No.                                                        9 Poplar Road # 41
                                                                Montesano, WA. 98563
                                                                (360) 249-5441

1    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

2    as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

3    On page 4, of the SOA, section 9, Ms. Semunegus, negligently asserts that the patent

4    regarding Melkuti, patent number 5,454,531, is pertinent to Plaintiff's patent application.

5    Melkuti consists of a main fan centrally located under the fuselage with an auxiliary fan

6    in each wing assembly.  There is no mention or depiction of triangulated structures or

7    components beyond the arrangement of the fans themselves in relation to each other.  There is no

8    mention or depiction of hexagonal cell, framework.

9    Ms. Semunegus's interpretation of Melkuti in regards to the Plaintiff's patent application

10   and invention is over-simplified.

11   This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

12   as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

13   The USPTO was negligent in mailing the SOA in a timely manner as it carried a drafting

14   date of 7/20/2005 and was not mailed until 8/12/2005.  Twenty-three (23) days elapsed between

15   drafting of the SOA and its mailing.

16   This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

17   as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

18   The Plaintiff phoned Ms. Semunegus on August 17th, 2005, at the phone number recited

19   in the SOA, (571) 272-6882, to clarify issues regarding the SOA.  Plaintiff was informed by a

20   recorded message stating that the phone number dialed was no longer in service.

21   Plaintiff then immediately phoned Mr. Carone on August 17th, 2005, at the phone number

22   recited in the SOA, (571) 272-6873, to clarify issues regarding the SOA.  Plaintiff was informed

23   by Mr. Carone that (1) Ms. Semunegus was no longer employed by the USPTO in an examiner

1   capacity of Plaintiff's patent application, (2) that he, Mr. Carone, was not familiar with the

2   Plaintiff's patent application, (3) that Plaintiff's patent application had just been reassigned to

3   John Radi, Art Unit 3641, and (4) Plaintiff was given the phone number to contact Mr. Radi,

4   (571) 272-1000.

5       On or about August 20th, 2005, Plaintiff started to hemorrhage internally as evidenced

6   from copious amounts of blood in defecation.

7       On January 30th, 2006, error in date in AP2 of January 27th, 2006, by Plaintiff, Plaintiff,

8   phoned Mr. Radi, at the phone number of (571) 272-1000, to clarify issues regarding Plaintiff's

9   patent application.  Plaintiff was informed by an employee of the USPTO that Mr. Radi had a

10  new phone number, (571) 272-5883.  Plaintiff phoned Mr. Radi at this number and was told by

11  Mr. Radi that he could not review Plaintiff's patent application until Plaintiff answered the SOA.

12  Plaintiff was also told that he, Mr. Radi, was a new hire.  Plaintiff informed Mr. Radi of his

13  health problems and his confusion over the SOA and his need to clarify certain issues.  Mr. Radi

14  reiterated that he could not review the Plaintiff's patent application until he received a reply to

15  the SOA.

16      Plaintiff phoned Mr. Radi on February 2nd, 2006, and told him that he would soon be

17  mailing his reply to the SOA, and he would appreciate it if Mr. Radi talked to Mr. Carone as to

18  waiving the fees applicable to the late reply.  Plaintiff was told by Mr. Radi that he would discuss

19  waiving fees with Mr. Carone as to the Plaintiff's assertion that the lateness was due to not being

20  able to clarify issues regarding the SOA and health issues.

21      To reiterate, Plaintiff mailed his AP2 and PETITION FOR EXTENSION OF TIME

22  UNDER 37 CFR 1.136(a) FY 2005 with instructions for whoever was responsible for processing

23  said form to contact Mr. Carone at (571) 272-6873 regarding fees, on February 8th, 2006.

1    On March 31st, 2006, Plaintiff, received Notice of Abandonment, mailed March 28th,

2    2006, for the reason:

3    *"A reply was received with a request for extension of time, however appropriate fees were not*
4    *included in accordance with 37 CFR 1.17(a)(3)."*
5

6    Forty-eight (48) days elapsed between Plaintiff's AP2 and the Notice of Abandonment.

7    The USPTO was negligent in informing the Plaintiff of a change in examiner. (See

8    MPEP 903.08)

9    This act of negligence injured Plaintiff's ability to prosecute Plaintiff's patent application

10   as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

11   The USPTO was negligent in providing the Plaintiff with an examiner knowledgeable of

12   Plaintiff's patent application, thereby injuring Plaintiff's ability to clarify issues regarding the

13   SOA. At this point the USPTO effectively abandoned the prosecution of Plaintiff's patent

14   application. (See MPEP 708.03)

15   This act of negligence severely injured Plaintiff's ability to prosecute Plaintiff's patent

16   application as well as injured Plaintiff's ability to defend Plaintiff's invention in the future.

17   The examination/prosecution of Plaintiff's patent application was totally destructive in

18   nature. Arguments and naked assertions made by Ms. Semunegus lacked any examples or

19   reasoning, relying on mere conclusion without any prima facie evidence to validate her

20   arguments or assertions. MPEP 707.07(j)(II) reads in part:

21   *"The examiner's action should be constructive in nature ... "*
22

23   Plaintiff mailed by Certified Mail a Claim against the USPTO, on March 30th, 2007, and

24   said Claim was eventually filed with the USPTO with an acceptance date of April 5th, 2007. The

25   USPTO rejected Plaintiff's Claim in a letter dated October 3rd, 2007.

COMPLAINT FOR DAMAGES          Page 21 of 23          Richard Tyler Frazer
Case No.                                              9 Poplar Road # 41
                                                      Montesano, WA. 98563
                                                      (360) 249-5441

1    As the entire file wrapper, including Office Actions can be used as evidence in Ex parte

2   Reexaminations, interference proceedings and infringement litigation, it is the assertion of the

3   Plaintiff that an examination/prosecution of a patent application must be made in a professional

4   manner by an competent and experienced examiner of the Art to which an invention most clearly

5   pertains or is related thereto to have any value.

6    The value of a granted patent is commensurate with the nature of the

7   examination/prosecution of a patent application.  A poor examination/prosecution of a patent

8   application places an unnecessary and unfair burden upon a patent owner in proceedings

9   regarding his or her patent as a patent owner will not only be faced with defending his or her

10   patent but in also defending the negligent actions of the USPTO and its employees.

11    The acts of negligence as enumerated above, some of which may seem petty in regards to

12   omitted words and misspellings, others more serious such as improper interpretation and

13   application of law, omission of pertinent portions of forms, confusion and intermixing of forms,

14   naked assertions lacking prima facie evidence or reference to statutory authority and pertinent

15   section of MPEP for rejection of claims, the willful disregard of the plain meaning of the

16   specification and claims and arguments made by Plaintiff as to what his invention was and

17   consisted of, and an overall lack of due care and diligence by the USPTO in actually doing

18   anything to aid in the examination/ prosecution of the Plaintiff's patent application and the

19   effective abandonment of Plaintiff's patent application by the USPTO, leaves grave doubts to be

20   held by the Plaintiff as to the whether or not Plaintiff's patent application was effectively

21   abandoned at the assignment of Plaintiff's patent application to Art Unit 3641 in general, and to

22   Michael Carone, Lulit Semunegus and John Radi, specifically.

1    The USPTO was negligent in examining/prosecuting Plaintiff's patent application to the

2   point of destroying Plaintiff's monopoly rights to his invention.  This damage is unrecoverable.

3   Plaintiff has no confidence in the USPTO to perform a competent and professional

4   examination/prosecution of Plaintiff's patent application, or any future application(s) for that

5   matter.  The Plaintiff has lost invaluable time and incurred extreme stress, physical pain and

6   damage because of the actions and inaction of employees for the USPTO.  The Plaintiff is

7   entitled to the fair market value of his invention and compensation for injuries sustained in

8   prosecuting Plaintiff's patent application under adverse and unfair conditions.  The pattern of

9   negligence by the USPTO and its employees will continue unless this Court implements the

10   relief requested below.

**Relief:**

12   Wherefore, the Plaintiff prays for relief and judgment against all defendants, jointly and

13   severally as follows:

14   **Remedies at Law:**

15   Awarding money damages, along with pre-judgment and post-judgment interest as

16   provided by law, to Richard Tyler Frazer, as equitable relief in the amount of, $12,000,000.00,

17   U.S., is necessary to compensate the Plaintiff for his loss of time, health and monopoly control of

18   his property.

19   Dated this 20th day of March 2008.

20   Plaintiff

21

22

23   Richard Tyler Frazer

COMPLAINT FOR DAMAGES          Page 23 of 23          Richard Tyler Frazer
Case No.                                             9 Poplar Road # 41
                                                     Montesano, WA. 98563
                                                     (360) 249-5441